### No. 3496

### Second Circuit

### CORY v. ASKEW

(January 31, 1930. Opinion and Decree.)
(March 24, 1930. Rehearing Refused.)

See, also, Cory vs. Askew, 11 La. App. 110, 120 So. 779; Cory vs. Askew, 11 La. App. 645, 123 So. 435; and (La. Sup.) 125 So. 455.

Harry V. Booth, and Geo. T. McSween, of Shreveport, attorneys for plaintiff, appellant.

John B. Files, of Shreveport, attorney for defendant, appellee.

ODOM, J. The plaintiff was employed by defendant as a common laborer in the oil fields, his specific work being around a derrick, and on August 15, 1927, while lifting a piece of iron pipe, his foot slipped, and he fell, striking his left side against the pipe. He alleges that as a result of the fall the left side of his stomach was torn and lacerated, and the tissues, muscles and ligaments were bruised and deranged, that his kidneys and bladder were severely lacerated and torn, and that, as a result, the sciatic nerve on that side was injured, causing sciatica—all of which injuries, he alleges, have incapacitated him from doing labor of a reasonable character, and he sues for compensation for 300 weeks. The answer is a general denial.

The trial in the district court resulted in a judgment in favor of plaintiff for compensation for 5 weeks, at $20 per week, plus costs and medical expenses. From this judgment, plaintiff appealed.

A careful review of the testimony reveals that. the judgment appealed from is correct. After plaintiff's fall on the floor of the derrick on August 15th, he continued his work during that day and the day following, but on the 17th he made complaint to the foreman, who suggested that he go to Dr. Alexander for an examination. Dr. Alexander testified that he found that plaintiff had a ruptured abdominal wall, and that he could do nothing for him, and suggested that he be carried to a sanitarium for further diagnosis and for treatment, if necessary. On August 18th plaintiff was carried to a sanitarium, where he was examined by three physicians, who, from their testimony, examined him thoroughly and kept him under observation for several days. At that time, plaintiff made no complaint of any injury, except to his side, and as his physicians could find no evidences of injury to his side, except a small abrasion on the skin, they made a thorough examination in order to ascertain, if possible, what caused the pain from which plaintiff was then complaining. Their written report which we find in the evidence, and which is in accordance with their oral testimony before the court, shows that plaintiff was a young, robust individual, with bad tonsils, one bad tooth, heart and lungs normal, no evidences of hernia, but evidences of pain in the sacroiliac region, and an infected prostate gland, showing the presence of numerous pus cells. Their conclusions were as follows:

"In our opinion, he has evidence of neuritis of left hip, due to focal infection situated most probably in prostate gland. Evidently this focus of infection is prolonging his disability, consequently if cleared up would most probably stop his symptoms."

These physicians are in charge of a sanitarium in the city of Shreveport, do not represent and have no connection whatever with the defendant or the surety company, but made their examination and

diagnosis as they would of any other patient brought to them for treatment.

The testimony shows that plaintiff remained at the sanitarium for 34 days, during a portion of which time he was kept under observation by these physicians, and was finally ordered to leave the sanitarium by a representative of the surety company, for the reason that the physicians who had examined him found nothing wrong, except as above stated, the physicians being of the opinion that the fall of which plaintiff complained had no connection whatsoever with the pain of which he complained.

After being discharged from the sanitarium, plaintiff, it seems, secured work in El Dorado in an oil field at $5 per day, the same wage which he was receiving while working for defendant, but as to how long he worked the record is not clear. He says himself, however, that he did work in the oil field, but suffered pain while doing so.

In the month of December, 1927, plaintiff, through Harry V. Booth and Hoyc Grafton, attorneys, filed suit against defendant, alleging that he had received an injury while at work around a derrick, which injury had produced hernia which had disabled him, and he asked compensation in that suit for 300 weeks on account of the hernia. When that case was called for trial on February 16th following, plaintiff, through counsel, dismissed his claim as in case of nonsuit. Plaintiff, on being asked why he dismissed the suit, stated that he did not dismiss it, but his attorneys did, because they were not able to get any doctors to give evidence in his favor. The present suit was instituted by Mr. Booth and another attorney on March 22, 1928.

When the present suit was called for trial, plaintiff called two physicians, Drs. Bodenheimer and Richardson; they examined him, and stated that, while he had no hernia, he did have what they considered a rupture of the muscles of the abdominal wall above the inguinal ring on the left side, which they said could cause the pain of which plaintiff complained. They both stated that, with considerable strain, they felt sure that plaintiff would suffer pain. They examined him on the day before the trial, which was the first time they had seen him, and could not, of course, tell when he received the injury to the muscle, but stated that it was not congenital, and must have been caused by some strain or blow.

The case was tried on June 8, 1928, nearly 12 months after the alleged injury. As the physicians who made a thorough examination of plaintiff immediately following his alleged injury were unable to find any injury to his abdominal wall, and as plaintiff worked for approximately 2 days after the alleged injury, and then for some time in the oil fields at El Dorado, it is by no means clear that the disability of which he now complains was the result of the injury which he received when he fell against the pipe. In plaintiff's original suit, he alleged that he had a well-defined, well-developed hernia, and that he had been treated by physicians, and had requested defendant to pay the expense of an operation. But, when he filed his second suit, he made no mention of a hernia, and the physicians called by him specifically stated that he had none. All this leads us to entertain some doubt of plaintiff's sincerity in making his claim. We are convinced from the evidence that plaintiff is not disabled as a result of the alleged injury.

The district judge allowed plaintiff compensation for 5 weeks, the period of time he was in the sanitarium under observation. We think the judgment appealed from is correct, and it is accordingly affirmed.

DREW, J., takes no part.